Welch, J.
There is clearly no case made for setting aside the widow’s election, on the ground that she was not sufficiently advised by the probate judge. The law only makes it the duty of the judge to advise her of the effect of such election upon her rights as widow. He is not bound, nor as j udge is he is authorized, to instruct her with regard to the validity of the will, or her rights as heir, in case the will should be set aside, *or its devises declared to be void. The probate judge seems to have said and done all the lawrequired of him in the case.
Whether there is a proper case for setting aside the plaintiff’s election on the ground of her ignorance of her rights, or mistake, may be a question of more difficulty.
But the view we take of the case renders both these questions immaterial.
*333 We hold that the election of the widow to take under the will tdoes not estop her from contesting the will, denying the validity of its devises, or setting up her claims as heir. She can do all or either of these, without having her election set aside. Her right to elect is the creature of statutory law, and we must look to the statutes creating it, alone, for the estoppel it is to work. These statutes make her election to take under the will a bar to dower, and to her distributive part of the personal estate due to her as widow, and to nothing else. A contrary reading of the statutes would, in many instances, result in the greatest injustice to her. She is compelled to make an election, and is only allowed one year for that purpose. The heirs may contest the will, or not, at their discretion, and they are allowed two years in which to commence the contest. The widow must complete her election within one year, and the heir must begin his contest in two years. How can the widow know, at the time of making her election, whether there will be a contest? And if she could know that, must she, at her own peril, predetermine the rights of the parties thereto ? There would be no safety to her in such a construction of the law. She might validate the will by an election, and the heirs invalidate it by a contest. It would then seem to be a will as to her, and no will as to them. On the other hand, should she decide that the will was invalid, and would be set aside, and therefore decline to take under it, the will might ultimately be established, and she be made to lose all benefit, however great, of its provisions in her favor. Thus an election, which was intended for the benefit of the widow, would become a means to entrap her, and would render her right uncertain and impracticable. Such is not the law. If there is no valid will, there is no valid election, and of course no estoppel or bar. And it matters *not whether the invalidation takes place before or after the election, or at whose instance it takes place. It is only in the event that the document probated becomes or remains established as a valid “ will,’ that her election can have any effect whatever; and when such is the case, the effect of the election is confined to her rights as widow, and can not reach her rights as heir to property not effectually and legally disposed of by the will. The will and its devises and bequests to other persons, stand unaffected by her election, either to take or to refuse its provisions in her favor. The whole effect, in the one case, is to destroy her rights as widow, and in the other to destroy her rights *334 as devisee or legatee, and in their place to give her the rights of the widow of an intestate.
Tho demurrer, therefore, in case No. 148, in which tho plaintiff asks for a contest of the will, and seeks to set it aside, was not well taken, and the judgment in that case must be reversed.
Tho principal question, however, and that mainly argued by counsel, arises in the other case: Can the devise to the county bo supported as a valid devise, vesting the title of the property in the county or in its commissioners? The plaintiff says it can not, substantially for three reasons: 1. Because a county or its commissioners have no power given thorn by law to take or hold real estate by devise; 2. Because the devise is to the county, eo nomine, and not to its corporate agent, the board of commissioners; 3. Be-, cause the will 'does not specify the uses to which tho property is to be appropriated.
Our wills act authorizes devises to be made “to anjperson.” A county, or, more properly, its board of commissioners, is a quasi corporation, and we see no good reason why it may not be regarded as a “ person,” within the meaning of this act. The term was evidently intended to be used in a broad sense, and to include every party that could safely, and without contravening the policy of our laws, be made the recipient of testamentary donation, whether of real or personal property. We have no statutes of mortmain in Ohio, and it has never been our policy to prohibit devises or bequests to corporations of any kind. We have as yet experienced no evils rendering *such legislation necessary; and I am not aware that, in any country, prohibitory laws of that nature have been made to apply to political or municipal corporations. The real recipients of bounties to such are the tax-payers of the municipality, a majority of whom, in most cases, are poor people. It is conceded, by counsel for plaintiff, that corporations proper, of all kinds, are “persons,” within the meaning of this act, and can have the benefit of its provisions equally with natural persons. Why, then, should the legislature thus discriminate in their favor, and against political corporations ? Surely the latter are as indispensable to tho well being of society, and as much in need of the bounties of the rich and liberal, as are many of the former.
By the act of March 3,1831 (S. & C. 1228), the commissioners arc “ authorized to receive donations of land, money, and other property, . . . and to appropriate the same ” to the payment of the ex *335 penses of erecting public buildings for the use of the county. If the word “ donations ” here is technically too narrow to include devises, it at least shows the animus of the legislature, and sheds light upon the meaning of the wills act. This act of 1831 was in force at the time of the passage of the wills act, and it is hardly supposable that the legislature, by the use of the words “ any person ” in the latter act, meant to exclude counties from the benefit of its provisions. Certainly no good reason is shown why they should so discriminate.
The county commissioners are, by various statutes, authorized to “purchase " real estate for the use of the county. S. & C. 1229, see. 2,249; see. 1. Every lawyer knows, that title by purchase is title by any means except descent, and, of course, includes title by devise. That the word purchase will have this original and technical meaning, when used in a statute, and not controlled by other statutes, or the general policy of the law, was expressly decided by this court, in American Bible Society v. Marshall et al., 15 Ohio St. 538. There is the total absence of any such policy, or counter legislation, and our laws, so far as they have gone, are in the contrary direction. The act of 1831 not only authorized donations of land to counties, but it contains, as do other statutes on *the same subject, stringent provisions, in cases where the land is not donated, for insuring its purchase at the lowest price. If the commissioners can acquire land at the 11 lowest bid ”—which may be one cent—why may they not acqnire it as a gift? And if as a gift, why not as a testamentary gift? No reason, outside of the supposed technical meaning of doubtful words, is attempted to be shown why they should not; and we think that we are only carrying out the spirit and policy of our laws, and are violating no sound and settled rules of construction, when we hold, as we do, that a county may take and hold real estate by devise; that it is a “ person,” within the meaning of the wills act, and may thus become a “ purchaser,” within the meaning of the acts authorizing counties to purchase real estate, or to take the same by gift.
But it is said that the devise is void, because it is to the county by name, and not to the commissioners of the county. We are unable to see any weight in this objection. The board of county commissioners is the body—the quasi corporation—in whom is vested by law the title of all the property of the county. In one sense they are the agents of the county, and in another sense they are the *336 county itself. It is in this latter sense that they acquire, and hold in perpetuity, the title to its property. In this capacity they not only act for tho county, but also act as the county. A deviso to the county is a devise to the commissioners of the county, and vests tho title in them, for the uses of the county. The county, and the commissioners of the county, are often convertible terms. Tho statutes referred to often so use them, for while they provide for vesting the title of land in the commissioners, they speak of the land as “ belonging to the county.” The case seems perfectly analogous to those of devises to unincorporated churches, to parishioners, and to the poor of a hospital, where the title has always been held to vest in the parson, the church wardens, and the mayor and burgesses, respectively, for the use of the beneficiaries intended. In Trustees of Green Tp. v. Campbell et al., decided at the last term (but not yet reportod†), this court held, that a grant to the legislature of the State of Ohio was a grant to the State of Ohio, and vested *title in the state. That was a stronger case than tho present, and fully warrants us in holding that a devise to the county vests the title in its commissioners.
It remains to inquire whether the devise is void because it designates no uses to which the property is to bo applied. A county can hold and use real estate only for certain specified public purposes— the support of the poor, the administration of justice, tho maintenance of local government, and the establishment and repair of roads and bridges. But is it necessary expressly to name these uses, or any of them, in a devise or grant to the county? If any are named, the land must be applied to them, and can not bo used for other lawful county purposes. But if the testator, or donor, intends the land donated to bo used for any and all legitimate and proper county purposes, is it necessary in the will or deed to say so in that form of words? Unsophisticated men would hardly think so. They would be apt to believe, as we do, that a designation and limitation of the uses to which the property may be applied, is found in the name and nature of the devisee or grantee. A devise to a county, or to the commissioners of a county, is a devise for any and all lawful county uses. Should the county authorities, after acceptance of the gift, undertake to apply the property to unlawful uses, it would be the business of the public, and not of the donor’s *337 heirs, to interfere and prevent the perversion. What we have to do with now, is the power of the county to accept the gift. The subsequent use or abuse of it is á different thing, and does not belong to the present case.
This view of the ease renders it unnecessary to consider many of the questions argued by counsel as to public uses and charities. The legal title being in the commissioners, and there being no occasion for the appointment of a trustee, or the declaration of a trust in the heir, but few of these questions arise in the case. It also saves us the necessity of deciding the various constitutional questions, so ably argued by counsel, as to the validity and effect of the enabling act of March 31, 1864. If the capacity to take by devise already existed in the county, it would be out of the case to inquire into the power of the legislature to create the capacity by a ^retroactive law. The leading object of the act of March 31, 1864 (and perhaps that is its sole effect), seems to have been, not to grant the power to accept the property, but the power conveniently and profitably to enjoy and use it. With the enjoyment and use of the property, as has been said, we have now nothing to do. And with the ability of the county to raise means for payment of future installments of the annuity, the plaintiff has nothing to do. All that she can demand is, that they be paid as they fall due.
The position, that the property has become forfeited by the nonpayment of the expenses of probate, we suppose is not now seriously insisted upon. We think there was no failure to fulfill the conditions of the devise, such as would work a forfeiture. The will was probated before the county was advised of its existence, and it is not shown that any demand was made upon the county to refund the expenses of probate.
The judgment in case No. 148 will be reversed, and that cause will be remanded for further proceedings; and the judgment in case No. 149 will be affirmed.
Scott, C. J., and Day, White, and Brinkerhoee, JX, concurred.

Ante 11.